# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT LEE BOWIE,**

    Plaintiff,

    v.                                            Case No. 17-CV-1164

**WEST ROCK CO.,**

    Defendant.

## DECISION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Robert Lee Bowie worked at WestRock Services Inc.[1] for nearly seventeen years. Growing tired of his excessive absenteeism, in February 2016, WestRock placed Mr. Bowie on a last-chance agreement that required him to have perfect attendance for about six months. When Mr. Bowie failed to show up for a scheduled shift in August 2016, WestRock terminated his employment for violating the terms of the agreement.

Mr. Bowie claims that he was not scheduled to work on the day in question and that the real reason for his firing was because he is old, African-American, and disabled and he had taken several days of medical leave. After his administrative claim was dismissed, Mr. Bowie filed an employment-discrimination suit against WestRock in federal court. The Court subsequently dismissed Mr. Bowie's age-

---

[1] Mr. Bowie incorrectly identified his former employer as West Rock Co. is his complaints. *See* Defendant's Proposed Findings of Fact 1 n.1, ECF No. 30.

discrimination claim because it was not included in the administrative charge. WestRock has moved for summary judgment on Mr. Bowie's remaining claims. Because no reasonable jury could return a verdict in favor of Mr. Bowie on those claims, the Court will grant WestRock's motion.

I.  **Factual Background**

WestRock Services Inc. operates a manufacturing facility in Germantown, Wisconsin, that produces corrugated cardboard packaging products. Def.'s Facts ¶ 1. Robert Lee Bowie began working at WestRock in September 1999. *See* Complaint 2, ECF No. 1. Over the course of his employment, Mr. Bowie performed several positions before settling in as a bander operator. *See* Plaintiff's Response, ECF No. 38; *see also* Def.'s Facts ¶ 9. As a bander operator, Mr. Bowie operated a machine that banded together corrugated boards. Def.'s Facts ¶ 10.

In the bander operator role, Mr. Bowie worked on the third shift. Def.'s Facts ¶ 11. He usually worked eight-hour shifts, although he would occasionally be required to work extended shifts, for example, to cover another employee's vacation or as mandatory overtime to meet production goals. *Id.* Third-shift employees typically started their shift one evening and completed it the following morning. Def.'s Facts ¶¶ 24–25. WestRock's work schedule for third-shift employees listed the date that employees were to start their shift. Def.'s Facts ¶ 23.

In early February 2016, WestRock placed Mr. Bowie on a Last Chance Agreement because of ongoing attendance issues. Def.'s Facts ¶ 19 (citing Exhibit A to Declaration of Cindy Nelson, 33-1); *see also* Nelson Decl. ¶ 13, ECF No. 33. The

Agreement required Mr. Bowie to "maintain perfect attendance until 8/19/2016" and indicated that "[a]ny absence must be approved in advance by the Production Supervisor or Superintendent." Nelson Decl., Ex. A. The Agreement further indicated that "[f]ailure to make improvement or recurrence of inappropriate behavior or conduct within the specified time period . . . will result in immediate termination." *Id.* Mr. Bowie understood this to mean that he would automatically be fired if he incurred an attendance violation before August 19. Def.'s Facts ¶ 22. He signed the Agreement on February 2, 2016; the Agreement also was signed by WestRock's plant supervisor (Darrin Dohman), WestRock's human resources representative (Cindy Nelson), and Mr. Bowie's union representative. *See* Nelson Decl., Ex. A.

On February 11, 2016, Mr. Bowie was approved for intermittent medical leave under the Family and Medical Leave Act based on a range of health issues. *See* Exhibit 1 to Pl.'s Resp., ECF No. 38-1 at 2–4. The certification was to begin on March 1, 2016, and last for one year. *Id.* Mr. Bowie claims he used four days of FMLA leave: February 29, 2016; March 2, 2016; July 28, 2016; and July 29, 2016. *See* Pl.'s Resp. 1.

WestRock's longstanding practice is to post its overtime work schedules in its employee break room. Def.'s Facts ¶ 29. Mr. Bowie was aware of this practice. Def.'s Facts ¶ 30. Indeed, he checked the overtime schedule before leaving work each day. Def.'s Facts ¶ 31.

The overtime schedule for the week of July 31, 2016, indicated that Mr. Bowie was scheduled "7PM TO 7AM 8/4-6/16." *See* Exhibit B to Nelson Decl., ECF No. 33-2. In other words, he was scheduled to work from 7:00 p.m. to 7:00 a.m. on August 4, 5, and 6. Def.'s Facts ¶¶ 32–33. Mr. Bowie saw the schedule, Def.'s Facts ¶ 34, but he didn't think it required him to work on the evening of August 6, *see* Compl. 2–3; *see also* Def.'s Facts ¶ 42. Mr. Bowie worked his shifts on August 4 and 5. Def.'s Facts ¶¶ 36–37. However, he did not show up for work on the evening of August 6. Def.'s Facts ¶ 40. Mr. Bowie never called WestRock to clarify the schedule or report that he would not be working on the 6th. Def.'s Facts ¶¶ 41, 43.

On Monday, August 8, Mr. Bowie's immediate supervisor, Jon Hein, informed Mr. Dohman that Mr. Bowie had not shown up for his last-scheduled shift. Def.'s Facts ¶ 44. Mr. Dohman reviewed the Last Chance Agreement and determined that Mr. Bowie's unexcused absence on August 6 constituted a violation of the Agreement and warranted termination. Def.'s Facts ¶¶ 45–48. Rather than immediately fire him, Mr. Dohman waited a week to see if Mr. Bowie would report the absence as FMLA leave. Def.'s Facts ¶¶ 49–51. He failed to do so. Def.'s Facts ¶¶ 52–53. Consequently, on August 11, 2016, Mr. Dohman instructed Mr. Hein to inform Mr. Bowie that WestRock was terminating his employment because he violated the terms of the Last Chance Agreement. Def.'s Facts ¶ 54. Mr. Dohman asked Matthew Schoenbeck, the third-shift corrugator supervisor, to sit in on the termination meeting. Def.'s Facts ¶ 55.

Later that day, Mr. Bowie and his union rep met with Mr. Hein and Mr. Schoenbeck. Mr. Hein informed Mr. Bowie that WestRock was terminating his employment because his unexcused absence on August 6 constituted a violation of the Last Chance Agreement. Def.'s Facts ¶¶ 56–57.

Thereafter, Mr. Bowie filed a Charge of Discrimination with the Wisconsin Equal Rights Division, alleging that WestRock discriminated against him on the basis of his race and disability. *See* Exhibit A to Defendant's Brief in Support of Its Partial Motion to Dismiss, ECF No. 16. Specifically, Mr. Bowie alleged that he was discharged in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990, as amended. *Id.* The U.S. Equal Employment Opportunity Commission was unable to conclude that the information obtained through its investigation established a violation of Title VII or the ADA. *See* Exhibit 1 to Amended Complaint, ECF No. 5-1. Thus, on May 26, 2017, it dismissed the Charge and issued Mr. Bowie a right-to-sue letter. *Id.*

On August 25, 2017, Mr. Bowie sued WestRock in federal court, alleging that the company discriminated against him on the basis of his age, race, and disability, and retaliated against him for using medical leave. *See* Compl. 2–3; *see also* Am. Compl., ECF No. 5. The matter was randomly assigned to this Court, and all parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 3, 9 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). On December 29, 2017, the Court granted WestRock's motion to dismiss the age-

5

discrimination claim for failure to exhaust administrative remedies. *See* Decision and Order Granting Defendant's Partial Motion to Dismiss, ECF No. 21.

On May 24, 2018, WestRock moved for summary judgment on Mr. Bowie's remaining claims. *See* Defendant's Motion for Summary Judgment, ECF No. 28; Defendant's Memorandum in Support of Its Motion for Summary Judgment, ECF No. 29. After Mr. Bowie failed to respond to the Motion within the time required by Local Rules, the Court issued a show-cause order directing him to explain why the Court should not rule in WestRock's favor. *See* Order to Show Cause, ECF No. 37. On July 30, 2018, Mr. Bowie submitted a letter in response to the Court's show-cause order. *See* Pl.'s Resp. WestRock filed its reply brief in August 15, 2018. *See* Defendant's Reply Brief in Support of Its Motion for Summary Judgment, ECF No. 41. At Mr. Bowie's request, the Court held a status conference with the parties on September 13, 2018. *See* Minute Sheet for Telephonic Pre-Motion Conference, ECF No. 42. Mr. Bowie addressed several arguments WestRock had made in its summary-judgment briefs, and the Court expressed its intent to rule on the Motion in short time.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is

6

"genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

**III. Discussion**

WestRock argues that it is entitled to summary judgment on Mr. Bowie's remaining discrimination claims and FMLA retaliation claim.

**A. Discrimination claims**

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit shifted away from the traditional direct/indirect methods of analyzing employment-discrimination cases. Subsequent to *Ortiz*, the appropriate inquiry in such cases "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself-or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id*.

WestRock maintains that it fired Mr. Bowie for a legitimate, non-discriminatory reason: he violated the terms of the Last Chance Agreement when he failed to show up as scheduled on August 6, 2016. Mr. Bowie disputes whether he was in fact required to work on the evening of the 6th. From the Court's view, the schedule for the week of July 31—which indicated that Mr. Bowie had to work "7PM TO 7AM 8/4-6/16," *see* Nelson Decl., Ex. B—is ambiguous, and Mr. Bowie's reading is a reasonable one. But that interpretation does not help Mr. Bowie here. As long as WestRock honestly believed that Mr. Bowie had violated the terms of the Agreement, Mr. Bowie cannot demonstrate that the stated reason for his firing was

8

a pretext for discrimination. *See Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (noting that an employee in a discrimination action must present evidence to suggest not that the employer was mistaken in firing him but that it was lying to cover up the true reason) (citations omitted). The record here establishes that WestRock honestly believed that Mr. Bowie was scheduled to work on August 6 and that his failure to show up for work that day constituted a violation of the Last Chance Agreement, which required perfect attendance. *See* Def.'s Facts ¶¶ 32–33, 39–57; *see also* Exhibit B to Declaration of Jon Hein, ECF No. 32-2. The fact that this all occurred just prior to the expiration of the Agreement on August 19 appears to be coincidence rather than suspicious timing.

Moreover, Mr. Bowie has not presented any evidence from which a reasonable factfinder could conclude that WestRock fired him because he is African-American or disabled. Mr. Bowie admitted during his deposition that he had no proof of a discriminatory animus; his claims were based simply on his "feeling." *See* Exhibit B to Declaration of Tony H. McGrath, ECF No. 31-2. Unfortunately for Mr. Bowie, his feelings—no matter how sincerely held—are not alone sufficient to defeat summary judgment. Missing here is any evidence of racial animus, such as derogatory comments or disparate impact. Instead, the record simply contains no evidence to suggest that WestRock's decision to fire of Mr. Bowie was motivated by anything other than its belief that he had violated the Last Chance Agreement. Accordingly, WestRock is entitled to summary judgment on Mr. Bowie's discrimination claims.

## B. FMLA retaliation claim

It is unlawful for employers to discriminate against an employee who has exercised his FMLA rights. *See* 29 U.S.C. § 2615(a)(2). To make out a claim of retaliation under the FMLA, the employee must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017) (citations omitted). WestRock does not appear to dispute the first two elements. *See* Def.'s Mem. 15–17. Thus, the issue is whether Mr. Bowie has provided sufficient evidence to support a causal connection between his use of intermittent FMLA leave and his termination. In deciding that question, the Court must "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *King*, 872 F.3d at 842 (citing *Ortiz*, 834 F.3d at 764–66).

Mr. Bowie has failed to present sufficient evidence from which a reasonable factfinder could infer that WestRock fired him for taking FMLA leave. WestRock didn't immediately fire Mr. Bowie after he failed to show up for work on August 6. Instead, the company waited a week to see if Mr. Bowie would claim the absence as FMLA leave. Despite successfully exercising his FMLA rights throughout 2016, Mr. Bowie did not submit a claim for the 6th, and so WestRock terminated his employment for violating the Last Chance Agreement. Mr. Bowie has not at any time in this action claimed to have been on FMLA leave on the 6th.

Furthermore, the record shows that WestRock did not consider an FMLA absence to be a violation of the Last Chance Agreement. Mr. Bowie acknowledges that he was out on FMLA leave on four occasions from February to July 2016. *See* Pl.'s Resp. 1. WestRock did not fire Mr. Bowie when he returned to work after those approved absences. And there is no evidence to suggest that WestRock waited until August 6—after Mr. Bowie's non-FMLA related, unexcused absence—to retaliate against him for his previous uses of FMLA leave. Accordingly, WestRock also is entitled to summary judgment on Mr. Bowie's FMLA retaliation claim.

## IV. Conclusion

For all the foregoing reasons, the Court finds that no reasonable jury could return a verdict in favor of Mr. Bowie on any of his remaining claims. The Court will therefore grant WestRock's summary judgment motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 28, is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment that Mr. Bowie take nothing from the Complaint or Amended Complaint.

Dated at Milwaukee, Wisconsin, this 16th day of October, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge